IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DORIS ARCHER,

   Plaintiff,

   v.

CAPTAIN MYRON LOGAN, et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:13-CV-3439-TWT

**OPINION AND ORDER**

This is a section 1983 malicious prosecution case. It is before the Court on the Defendant Myron Logan, Robert Ellison, and Antonio Catlin's Motion for Summary Judgment [Doc. 17]. For the reasons set forth below, the Defendants' Motion for Summary Judgment [Doc. 17] is GRANTED.

**I. Background**

This case arises out of the May 4, 2012, arrest of the Plaintiff Doris Archer on a charge of aggravated stalking.[1] The events leading up to the arrest began in 2003. The Plaintiff and the Defendant Myron Logan, a detective for the DeKalb County

---

    [1]    Pl.'s Statement of Facts ¶ 1.

Police Department, were neighbors.² An incident occurred between the Plaintiff and Logan's daughter when the latter was walking her dog in front of the Plaintiff's house.³ Shortly after the incident, Logan found dog feces on his car, and believed the Plaintiff was responsible.⁴ Consequently, on June 16, 2003, Logan filed a petition for a temporary protective order against the Plaintiff.⁵ A hearing concerning the petition was held on July 2, 2003, before Judge Becker of the DeKalb Superior Court.⁶ At the hearing, the Plaintiff and Logan agreed to a consent protective order which forbade either party from contacting, or entering the property of, the other for a period of six months.⁷

However, both parties claim that the conflict continued for years thereafter. Eventually, the Plaintiff began calling the DeKalb County Police Department and spoke to Logan's supervisor, the Defendant Robert Ellison.⁸ The Plaintiff complained that Logan (1) was having the Plaintiff followed in public, (2) tapped the Plaintiff's

---

²     Defs.' Statement of Facts ¶ 4.

³     Id. ¶ 5.

⁴     Id. ¶ 7.

⁵     Id.

⁶     Id. ¶ 8.

⁷     Id.

⁸     Pl.'s Statement of Facts ¶ 7.

phone, and (3) placed a tracking device on the Plaintiff's car.[9] Then, on February 18, 2010, the Plaintiff met with the Defendant Antonio Catlin, who at the time was a sergeant in Internal Affairs at the DeKalb County Police Department.[10] The Plaintiff filled out a complaint form, which stated in part:

> It is my belief that Myron Logan . . . is having me followed by persons unknown to me. What I am seeing is cars following me by trying to get as close to me in my lane and cutting me off pulling out in front of me. When ever [sic] I am in a store grocery, gas station, shopping center someone is always there cutting me off, pushing the buggies in front of me getting in my ear and talking loud. One lady was chewing gum in my ear. When I am out walking they try to block me from crossing the street with their cars. . . . What I am asking Internal Affairs is to help me find out if Myron Logan is the cause of all my complaints and if so put an end to it.[11]

Logan thought that the Plaintiff's actions were a violation of the 2003 protective order.[12] Consequently, on February 24, 2012, Logan sent a letter to Judge Becker explaining that the Plaintiff had been contacting his place of employment.[13] In addition, Logan sought help from Craig Scott, the Chief Investigator of the DeKalb

---

[9] Defs.' Statement of Facts ¶ 11.

[10] Id. ¶ 12.

[11] Id. ¶ 12.

[12] Id. ¶ 15.

[13] Id.; Logan Dep., Ex. 7.

County District Attorney's Office.[14] Logan relayed his version of the events to Scott, and provided Scott with a copy of the 2003 protective order.[15] After discovering that the protective order was only in effect for six months, Scott informed Logan that it had already expired.[16] In response, Logan sent an e-mail to Scott which stated, in part: "[C]an you please get an opinion from one of the [assistant district attorneys] in reference to using a more current charge to address what has happened to me? I would still like to meet with the judge to do another order if I have to."[17] Later that day, Logan sent Scott another e-mail, which stated in part:

> Craig, do whatever you think is best along with the [assistant district attorney]. If there is any doubt that the best course of action is for me to have a new hearing with Judge Becker this will be fine. I certainly want to do things in the right manner. If this is the best direction for me to go in, I ask that you give me the opportunity to go before Judge Becker ASAP to start the process.[18]

On March 9, 2012, Logan received an e-mail from Brooke Wandel – an investigator for the DeKalb County District Attorney's Office – stating that a file on

---

[14]  Logan Dep., Ex. 7.

[15]  Id.

[16]  Id.

[17]  Id.

[18]  Id.

the Plaintiff had been opened.[19] Wandel also stated that she planned on presenting the case to a Grand Jury to secure an indictment against the Plaintiff for aggravated stalking.[20] The Grand Jury ultimately did issue the indictment, and the Plaintiff was then arrested.[21] The Plaintiff spent a day in jail before being released on bond.[22] On July 30, 2012, the District Attorney dismissed the charge against the Plaintiff.[23] The Plaintiff brought suit against the Defendants Myron Logan, Robert Ellison, and Antonio Catlin. The Plaintiff asserts claims for malicious prosecution (section 1983 and Georgia law) and First Amendment retaliation (section 1983). The Defendants now move for summary judgment.[24]

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists

---

[19]   Id.

[20]   Id.

[21]   Pl.'s Statement of Facts ¶ 1.

[22]   Id. ¶ 13.

[23]   Id. ¶ 14.

[24]   In her Response Brief, the Plaintiff concedes that the Defendant Catlin is entitled to summary judgment. See Pl.'s Resp. Br., at 5.

and that the movant is entitled to judgment as a matter of law.[25] The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.[26] The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.[27] The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.[28] A "mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."[29]

### III. Discussion

#### A. Section 1983

The Plaintiff claims that the Defendants caused her to be prosecuted and jailed – without probable cause – in violation of her Fourth Amendment rights. The Plaintiff also claims that the Defendants were acting in retaliation to her complaints to the DeKalb County Police Department, which violated her First Amendment rights.

---

[25] FED. R. CIV. P. 56(c).

[26] Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).

[27] Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

[28] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

[29] Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).

Under 42 U.S.C. § 1983, any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law."

Logan argues that the Plaintiff's section 1983 claims against him fail because his allegedly culpable actions – e.g., relaying his version of the events to members of the DA's Office – were not actions under the color of state law. As noted, a "successful section 1983 action requires that the plaintiff show she was deprived of a federal right by a person acting *under color of state law*."[30] To be sure, "[n]ot all acts by state employees are acts under color of law."[31] Generally, "[a] person acts under color of state law when he acts with authority possessed by virtue of his employment with the state . . . or when the manner of his conduct . . . makes clear that he was asserting the authority granted him and not acting in the role of a private person."[32]

---

[30] Almand v. DeKalb Cnty., Ga., 103 F.3d 1510, 1513 (11th Cir. 1997) (emphasis added).

[31] Id.

[32] Myers v. Bowman, 713 F.3d 1319, 1329-30 (11th Cir. 2013) (internal quotation marks omitted); see also Almand, 103 F.3d at 1513 (11th Cir. 1997) ("A person acts under color of state law when he acts with authority possessed by virtue of his employment with the state.").

Thus, "acts of officers in the ambit of their personal pursuits are not done under color of law."[33]

Here, Logan was not acting under the color of state law when he was in communication with members of the DA's Office. He was simply describing, in his individual capacity, certain personal matters to those who had the authority and discretion to bring charges. No power bestowed upon him by virtue of his official position uniquely enabled him to do this, nor does the Plaintiff point to any. Thus, Logan was not "acting pursuant to the power he . . . possessed by state authority" but rather was "acting only as a private individual."[34]

In response, the Plaintiff makes two different, but related arguments. First, the Plaintiff argues that "Logan communicated extensively via email with the District Attorney's investigator with whom he had worked previously at the police department."[35] This argument fails. That he was often in contact with the DA's Office during the course of his official duties does not mean that *every* interaction he had with said office occurred "under the color of state law." Here, as explained earlier, he was not invoking any special authority when he described his personal conflicts with

---

[33] Myers, 713 F.3d at 1329 (internal quotation marks omitted).

[34] Almand, 103 F.3d at 1513 (internal quotation marks omitted).

[35] Pl.'s Resp. Br., at 7.

the Plaintiff to Scott. The Plaintiff then argues that "[h]ad Logan not been a captain in the Dekalb County Police Department, it is unlikely that he would have had such access – or the influence to initiate a criminal prosecution."[36] This is another way of arguing that because of Logan's official position, he may have been given preferential treatment. However, the Plaintiff cites to no authority indicating that a state official acting purely in his individual capacity – e.g., not using any power granted to him by the State – is said to have acted "under the color of state law" simply because he may have gained an indirect advantage by virtue of his official post. Accordingly, because Logan was not acting under the color of state law when he reported the Plaintiff's conduct to the DA's Office, Logan is entitled to judgment as a matter of law against the Plaintiff's section 1983 claims.

The Plaintiff's section 1983 claims against Ellison are based upon a theory of supervisory liability. The Plaintiff claims that Ellison "advised Captain Logan on how to handle the situation."[37] However, "claims under a theory of supervisory liability fail [if] the underlying [section] 1983 claims fail."[38] Consequently, because the Plaintiff's

---

[36] Pl.'s Resp. Br., at 7.

[37] Pl.'s Resp. Br., at 9.

[38] Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1308 (11th Cir. 2009).

section 1983 claims against Logan fail, Ellison is entitled to judgment as a matter of law against the Plaintiff's section 1983 claims.

**B. State Law Claims**

The Plaintiff claims that Logan and Ellison maliciously caused the Plaintiff's prosecution. Under Georgia law, "to state a claim for malicious prosecution . . . a plaintiff must show (1) prosecution for a criminal offense; (2) instigated without probable cause; (3) with malice; (4) under a valid warrant, accusation or summons; (5) which has terminated favorably to the plaintiff; and (6) has caused damage to the plaintiff."[39] There is "a fine line . . . between cases where a party directly or indirectly urges a law enforcement official to begin criminal proceedings and cases where a party merely relays facts to an official who then makes an independent decision to arrest or prosecute[;] [i]n the former case there is potential liability for . . . malicious prosecution . . . [and] in the latter case there is not."[40] Generally, "[a] person may be held liable for malicious prosecution when he provides information to an investigating officer that he knows to be false, and in doing so unduly influences the authorities to take the complained of actions."[41]

---

[39] Barnette v. Coastal Hematology & Oncology, P.C., 294 Ga. App. 733, 735 (2008) (internal quotation marks omitted).

[40] Tench v. Turner, 201 Ga. App. 156, 157 (1991).

[41] Turnage v. Kasper, 307 Ga. App. 172, 180 (2010).

Here, Logan argues that he did not specifically urge the DA's Office to prosecute the Plaintiff for aggravated stalking.[42] The Court agrees. The evidence in the record shows that Logan simply described the Plaintiff's actions to Scott,[43] and that the DA's Office then independently chose to prosecute the Plaintiff. Indeed, in Logan's e-mails to Scott, he expressly deferred to the DA's Office's judgment as to how to proceed.[44] Even more, Logan clarified in his deposition that he did not urge the DA's Office to take any particular course of action: "[E]verything was given to [the DA's Office] for them to make the decision with what was best to do . . . I really can't answer . . . who decided how they were going to write this up because . . . I had no input in it at all."[45] Logan further testified that he told Scott that he would be content if, instead of pursuing criminal charges, the DA's Office simply secured a restraining order against the Plaintiff.[46] The Plaintiff submits no evidence in response suggesting

---

[42] Defs.' Mot. Summ. J., at 14-15.

[43] Although Logan initially stated, incorrectly, that the Plaintiff was violating the 2003 protective order, the DA's Office quickly discovered that it had expired. Thus, it is clear that Logan's mistaken assertion had no bearing on the DA's Office's decision to pursue the charge for aggravated stalking.

[44] Logan Dep., Ex. 7 ("Craig, do whatever you think is best along with the [assistant district attorney].").

[45] Logan Dep., at 155.

[46] Logan Dep., at 156 ("I expressed to Craig in phone calls . . . [w]hatever the measure y'all can use to help me and my family, use it . . . [w]hether it's a criminal

that Logan directly urged the prosecution, or made any false statement that ultimately caused the prosecution. Accordingly, Logan is entitled to judgment as a matter of law against the Plaintiff's state law malicious prosecution claim. Because the Plaintiff fails to describe what material role – if any – that Ellison played in the prosecution, he is also entitled to judgment as a matter of law. Additionally, the Court's conclusion – that neither Logan nor Ellison instigated the prosecution – dooms the Plaintiff's state law false arrest claim as well.[47]

## IV. Conclusion

For these reasons, the Court GRANTS the Defendants' Motion for Summary Judgment [Doc. 17].

---

charge, whether it's a restraining order, whatever it is that you have at your disposal, I need help.").

[47] See Adams v. Carlisle, 278 Ga. App. 777, 792 (2006) ("[I]n cases involving false arrest, malicious prosecution, and false imprisonment, the law draws a fine distinction between occasions wherein a party directly or indirectly urges law enforcement officials to begin criminal proceedings, which result in potential liability, and incidents wherein a party merely relays facts to an official who then makes an independent decision to arrest, which does not result in liability."); Simmons v. Mableton Fin. Co., 254 Ga. App. 363, 365 (2002).

SO ORDERED, this 3 day of November, 2014.


                                            /s/Thomas W. Thrash
                                            THOMAS W. THRASH, JR.
                                            United States District Judge